**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VIRGIE PORTER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 04 C 6009** |
| **v.** | ) | |
| | ) | |
| **JO ANNE B. BARNHART** | ) | **HONORABLE DAVID H. COAR** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Virgie Porter ("Porter" or "Plaintiff") applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"). After the SSA denied her application and her reconsideration request, Plaintiff asked for a hearing. The Administrative Law Judge ("ALJ") who conducted the hearing concluded that Porter was not disabled for DIB purposes. After the Social Security Appeals Council denied Porter's request for review, she sought judicial review of the ALJ's decision, by filing a complaint against SSA Commissioner Jo Anne Barnhart ("Barnhart" or "Defendant"). At summary judgment, this Court found that there was an inadequate basis for the ALJ's ruling and remanded the case for additional proceedings. On remand, the ALJ produced a page that had been missing from the record, the absence of which was key to this Court's finding that there was an inadequate basis for the ALJ's conclusion. Now before this Court is Plaintiff's Motion to Alter or Amend the Final Judgment and Award Her Disability Benefits (Doc. No. 56), brought in light of this new evidence under Fed. R. Civ. P. 60(b)(2). After reviewing Plaintiff's case for reconsideration on the merits, Plaintiff's motion is DENIED.

1. **FACTS**

The factual and procedural posture of this matter has already been described by this Court in its summary judgment opinion dated March 26, 2006 (Doc. No. 46) ("Summ. J. Op."). Therefore, for present purposes this Court need only summarize the relevant facts.

The ALJ was asked to consider "whether the claimant is entitled to a period of disability and Disability Insurance Benefits ("DIB") under Sections 216(I) and 223 of the Social Security Act. The specific issue is whether she is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."

Applying the standard five-step DIB analysis of 20 CFR § 404.1420, the ALJ found that "claimant has at least one medically determinable severe impairment within the meaning of the Regulations," including "hypertension, non-insulin dependent diabetes mellitus, osteoarthritis of the left shoulder, a personality disorder NOS, a mood disorder with depressive features and anxiety secondary to medical complaints, and a pain disorder with both a medical condition and psychological factors." At step three of this analysis, however, he concluded that none of these impairments were sufficiently severe to qualify Plaintiff for presumptive disability under Appendix 1, Subpart P, Regulations No. 4 ("Appendix 1"). Then, at step four, the ALJ found that her residual functional capacity ("RFC") would allow her to perform "past relevant work," namely, the ownership and administration of a cleaning service. On this basis, Plaintiff was deemed not disabled.

In this Court's summary judgment opinion, we found that the ALJ had failed to adequately support his conclusions regarding Plaintiff's ability to work according to the applicable terms of Appendix 1. In light of the missing page, this Court was nonetheless "unable to reverse the ALJ decision and award benefits to Porter. The Court reache[d] this conclusion with great reluctance because the loss of a portion of the ALJ's decision prejudices Porter by delaying an ultimate decision on her claim and forcing her to relitigate at least part of that claim. That portion of the ALJ's decision that is contained in the record displays a lack of analysis or logical link between the evidence and the ALJ's ultimate findings." Summ. J. Op. at 15. As a result, the Court remanded the matter to the SSA pursuant to sentence four of 42 U.S.C. § 405(g) for additional proceedings pursuant to the opinion. During subsequent proceedings related to fees, this Court repeated its frustration over the SSA's failure to create a complete record, stating that "only the incompleteness of the record prevented this Court from reversing the ALJ and awarding benefits to Porter." Fees Op. at 4.

On remand, the ALJ produced the missing page to the parties. In light of this, Plaintiff has moved for reconsideration of this Court's prior opinion, arguing that the case should be reversed in light of the SSA's "egregious mishandling of this matter and the delay and wasted time and effort engendered by such mishandling," as well as the strong language of this Court's prior opinions on this issue.

## 2.    LEGAL STANDARD

Rule 60(b)(2) of the Federal Rules of Civil Procedure provides for relief from a final judgment due to "newly discovered evidence which by due diligence could not have been discovered" earlier. Fed.R.Civ.P. 60(b)(2).

Defendant has conceded that the new evidence makes vacation of the original remand order appropriate and urges this Court to simply consider the case on its merits and affirm or reverse and grant benefits as it sees fit. While this Court is inclined to do so and avoid any additional proceedings in this already prolonged matter, for the reasons stated below the failings discussed at summary judgment remain and the remand order will stand.

The Agency's final decision is subject to judicial review pursuant to 42 U.S.C. § 405(g), which provides that the findings "as to any fact, if supported by substantial evidence, shall be conclusive." The district court will uphold the ALJ's ultimate decision as long as the ALJ's findings of fact are supported by substantial evidence and there are no errors of law. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The district court reviews the entire administrative record, but does not reweigh evidence, resolve conflicts, decide credibility questions, or substitute its own judgment for that of the Commissioner. *Clifford*, 227 F.3d at 869. This is a "deferential, but not entirely uncritical" standard of review, because the ALJ's decision will not stand "if it lacks evidentiary support or [contains] an inadequate discussion of the issues." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). This Court may not set aside an inference made by the ALJ simply because we find the opposite conclusion more reasonable or question the factual basis. *Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988).

**3.     ANALYSIS**

This Court must consider whether the page now returned to the record resolves uncertainties in the ALJ's opinion so as to make remand unnecessary.  The parties also urge this Court to resolve the determination of benefits on the merits.

a.     <u>Production of missing page does not automatically resolve failings in the record</u>

Plaintiff argues that reversal of the ALJ's decision is *fait accompli* now that the missing page has been recovered.  Plaintiff largely relies on language used by this Court to express its frustration regarding the incomplete record.  *See, e.g.*, Summ. J. Mot. at 15; *see also* Fees Opinion at 4 ("only the incompleteness of the record prevented this Court from reversing the ALJ and awarding benefits to Porter.").  However, while this Court did state that the lack of the opinion's fifth page prevented us from granting Plaintiff's benefits outright, this was not equivalent to saying that production of the page would automatically result in the granting of those benefits – it was not the existence or non-existence of the page that was dispositive, but rather it was the Court's inability to know the contents of the page in question.  *See* Summ. J. Op. at 15 ("That portion of the ALJ's decision *that is contained in the record* displays a lack of analysis or logical link between the evidence and the ALJ's ultimate findings.") (emphasis added).

Therefore, this Court must consider the contents of the additional page, in light of the record as a whole, and determine whether reconsideration of the remand order is appropriate.

b.     <u>ALJ's determination remains unsupported by the record</u>

At summary judgment, this Court was troubled by the lack of explanation provided by the ALJ.  Specifically, it was unclear from the record at the time how the ALJ considered and

weighed: (1) Porter's testimony at the hearing; (2) medical evidence regarding Plaintiff's depression; (3) the testimony of Porter's long-term friend Abb Locke; and (4) certain comments by the testifying vocational expert ("VE"). We must consider whether or not the newly produced page remedies these failings when viewed in the context of the entire record.

    *i.  Plaintiff's credibility*

   As of the summary judgment ruling, there was no adequate explanation for why the ALJ declined to consider Porter's extensive testimony, in which she described pain she felt on a nearly constant basis, along with difficulties she had relating to others. With the introduction of page five of the ALJ's opinion, however, there is some explanation as to why her testimony was not given significant weight in the denial of benefits:

> In reaching this conclusion, I have considered the claimant's testimony and find it to be less than fully credible, as the testimony regarding her level of depression was contradicted by her later testimony that she visits friends at the casino even when she has no money. In addition, her statements regarding her driving activities are not in accord with statements which the claimant made to the independent medical examiners.

ALJ Op. at 5.[1] In isolation and in retrospect, these discrepancies may seem relatively minor, and perhaps not significant enough to warrant disregarding her testimony in its entirety. However, it can reasonably be inferred that the ALJ viewed these factual conflicts in the context of other factors available to him at the hearing, such as Plaintiff's demeanor or speech patterns.[2]

---

[1] Though it is not directly referenced as a reason for her lack of credibility, the ALJ mentioned another discrepancy in her testimony, whereby she claimed that she did not visit a psychiatrist at Cook County Hospital because of the wait, but acknowledged that she would wait up to two hours there to see other doctors. *See* ALJ Op. at 3.

[2] For example, when confronted with the fact that she drives herself to the casino, Plaintiff attempts to explain away this issue out of fear that the ALJ had come to believe she had been

Therefore, in light of the additional evidence provided by page five, there is no basis for this Court to second-guess the ALJ's determination that Porter's testimony was not generally credible. *See Clifford*, 227 F.3d at 869 (finding that "questions of credibility" made by the ALJ should not be reconsidered).

However, even though this Court accepts the ALJ's general doubts concerning Plaintiff's credibility, the impact of this finding requires clarification. The ALJ concludes only that Plaintiff is "not totally credible." ALJ Op. at 6. However, this suggests that she was at least partly credible. Without a more detailed description of the ALJ's reasoning, it is therefore unclear what impact Plaintiff's partial credibility had on several important factors that could reasonably have been effected by her credibility: (1) testimony before the ALJ regarding her mobility, pain, and memory problems; (2) accounts of her past work experiences, of which hers was the only first-hand testimony in evidence; (3) diagnoses by physicians and psychologists based on information that she provided; and (4) Locke's testimony, to the extent it was based on limited, manipulable interactions. While the ALJ references or disregards some of this evidence, he does not make clear to what extent, if any, these issues were each impacted by doubts over Plaintiff's credibility.

### ii. *Plaintiff's depression*

To a lesser extent, it is also troubling that, according to the record, the ALJ did not adequately consider significant evidence that was not reliant on Plaintiff's testimony, most importantly, her depression. At the hearing, Plaintiff's counsel spent the majority of her opening

---

deceitful. *See* Tr. at 53-54. The credibility of such an explanation cannot be evaluated *ex post facto* based on the transcript alone.

comments arguing that it was Porter's depression more than anything else that prevented her from working.[3]  *See generally* Tr. at 2-3.  She also referenced evidence that this depressive condition was not simply asserted by Plaintiff, but rather was documented by multiple authorities as a real medical condition.  *See id.*; *see also* ALJ Op. at 3 (summarizing medical findings); *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000) ("[M]ore weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances.") (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982); 20 C.F.R. § 404.1527(d)(2)).  As acknowledged by the ALJ, these diagnoses included: (1) an internal medicine consultative examination requested by the Disability Determination Service ("DDS") that found "possible delusional thinking regarding the pain in her body as well as poor memory and intellectual functioning" that he diagnosed as "depression"; (2) a DDS-requested independent consultative psychiatric evaluation that found "a mood disorder with depressive features and anxiety," concluding that she suffered from not only a "mood disorder but also from a personality disorder [not otherwise specified]"; and (3) a DDS psychologists' determination that, based on the psychiatric evaluation record, that Plaintiff "had a medically determinable severe mental impairment, because she displayed a moderate degree of limitation of her social functioning and had experienced one or two episodes of decompensation."  ALJ Op. at 3.  The ALJ also acknowledged that these diagnoses were to be afforded particular weight.  *Id.* at 5.  ("Since DDS consultants are deemed to possess a specific understanding of Federal disability

---

[3]Plaintiff's counsel's arguments at opening of course carry no evidentiary weight, but the fact that this was her focus at the hearing nonetheless highlights the ALJ's failure to consider these issues in his opinion.

programs and the evidence requirements of those programs, their expert medical opinions cannot be ignored.").

The ALJ accepted the fact that Plaintiff was depressed to some extent, stating "I find that the claimant has at least one medically determinable severe impairment within the meaning of the Regulations, and that her impairments include hypertension, non-insulin dependent diabetes mellitus, osteoarthritis of the left shoulder, a personality disorder NOS, a mood disorder with depressive features and anxiety secondary to medical complaints, and a pain disorder with both a medical condition and psychological factors."[4] *Id.* at 4. Functionally, however, the ALJ found that this litany of ailments did not significantly limit her activities: "after listening to the claimant's testimony regarding her day-to-day activities, I find that she has only mild limitation of her activities of daily living and social functioning and mild limitation of her ability to maintain concentration, persistence, or pace, but has had one or two episodes of decompensation." *Id.* at 4.

In making this conclusion, the ALJ does not seem to have considered the particular impact that her depression might have had. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). It is unclear how the ALJ arrived at his conclusion that her depression did not impact her functional capacity. The ALJ, rather than medical practitioners, is ultimately responsible for determining how the condition in question impacts the claimant's RFC. *See Clifford v. Apfel*,

_____

[4]It is possible that the ALJ believed that all Plaintiff's evaluations related to her depression were irretrievably tainted by her perceived lack of trustworthiness. *See* ALJ Op. at 5 ("[H]er statements regarding her driving activities are not in accord with statements which the claimant made to the independent medical examiners."). However, this conclusion is not made explicit, and there is no basis for believing that the treating physicians and psychologists had not accounted and adjusted for that possibility when they made their diagnoses.

227 F.3d 863, 870 (7th Cir. 2000); 20 CFR § 404.1527(e). Therefore, the fact that the medical diagnoses do not expressly state that she is limited in her professional abilities does not preclude the ALJ from doing so, particularly where the fact of her depression is established and well-supported. Also, the ALJ is supposed to go through an extensive, formalized review process touching on the "four broad function areas" described in 20 C.F.R. § 404.1520a(c)(3). *See* 20 C.F.R. § 404.1520(e)(2) (stating that the ALJ "must incorporate the pertinent findings and conclusions based on the technique"). That the ALJ went through this process with respect to her depression, or at least covered the scope of analysis it demands, is not apparent from the record.

Instead of approaching her depression in such a manner, the ALJ mentions but does not ultimately credit Plaintiff with workplace deficiencies that might have been attributable to various psychological considerations, depression included. To cover all his bases, the ALJ offered the VE an expanded hypothetical in which Plaintiff was "moderately impaired ability to work within a schedule, be punctual, and sustain a routine without special supervision." According to that description the VE still found, and the ALJ concurred, that she could perform past relevant work. The problem, however, is that even this hypothetical does not get to the functional impact of her depression, namely, that her mind was "coming and going" and that she might have had significant memory problems. In light of the limited countervailing factors – the credibility problems, her casino visits, and the minor tasks she is able to accomplish around the house – more thorough consideration of depression's debilitating effects was necessary.

     *iii.*    *Testimony of Abb Locke*

The fifth page does not remedy the fact that the ALJ gave no consideration to the testimony of Abb Locke ("Locke"), who also appeared at the hearing. Locke is a friend of Plaintiff's who had cared for her for over 20 years, providing for many of her day-to-day needs. Locke testified to Plaintiff's memory problems, shoulder pain, trouble sleeping, difficulty getting along with others, and general inability to get around. *See generally* Tr. at 45 *et seq.* Had the ALJ doubted Locke's credibility, or found that his statements weren't weighty enough to impact his ultimate determination, the ALJ's failure to consider this testimony might have been justified. However, nowhere in the opinion does he so much as mention Locke's statements, in which he made clear that: Plaintiff was prevented from working because "[s]he's been shaking. Her shoulder has been hurting and she wasn't, haven't been able to work"; "her mind be going"; she doesn't generally socialize with others; and she is prevented from performing a host of at-home tasks because "[s]he gets tired and her heart start beating fast. Sometime she can't move both her arms." Tr. at 46-49. This Court sees nothing in the record to discredit this testimony, and if credited it weighs heavily against Plaintiff's ability to function at a nominal capacity in her day-to-day-life, much less meet the requirements of a working environment. The ALJ's failure to give this testimony any perceivable weight in his written opinion renders a complete review impossible.

### iv.     Incomplete discussion of VE hypothetical and testimony

Also at issue is the testimony of Vocational Expert ("VE") Michael Komie, Ph.D., who testified at the hearing. Both the RFC and the hypothetical must account for all of the plaintiff's medically determinable impairments. *Kasberger v. Astrue*, Slip Copy, 2007 WL 1849450, at *4 (7th Cir. 2007) (citing 20 C.F.R. § 404.1545(a); *Young v. Barnhart*, 362 F.3d 995, 1002-1003

(7th Cir. 2004)). However, where the supporting evidence is thin, the relevant limitation need not be presented to the VE. *Kasberger*, 2007 WL 1849450, at *4.

The VE characterized Porter's work in billing and collections as semi-skilled and sedentary, her work as an owner/supervisor of a commercial cleaning service as light and semi-skilled, and her work as a home-care aide as unskilled and light. The ALJ then presented the VE with a hypothetical of an individual of Porter's age, education, and vocational background who could on occasion lift or carry 20 pounds, stand, sit or walk for six hours of an eight-hour workday, but could not use her left arm above shoulder height and who should avoid contact with the public and have only limited contact with co-workers and supervisors. The VE testified that such an individual could perform the commercial cleaning service work, if it was a night job where the public was not present, or could do billing work but not collections. The ALJ then asked about an individual who was moderately impaired in her ability to work within a schedule and be punctual. The VE testified that the billing work would be impacted but the cleaning service would not. In response to the ALJ's further limitation that the individual needed to lie down throughout the day because of pain, the VE stated that this would present a "rehabilitative situation that could not be full-time competitive employment" and would preclude a job without a "rehabilitation placement." Plaintiff's counsel attempted to expand this hypothetical, but was largely unsuccessful.

The ALJ's discussion with the VE regarding an RFC hypothetical was afforded a great deal of weight. *See* ALJ Op. at 5-6. However, it is not entirely clear that the offered hypothetical accurately accounted for Plaintiff's situation. *See* discussion *supra* subsections *I* through *iii*; *see also Steele*, 290 F.3d at 942 ("[Hypothetical] ordinarily must include all

limitations supported by medical evidence in the record.").  In addition to the issues mentioned above that were not addressed through the VE's hypothetical, the ALJ also did not discuss his reason for ignoring: (1) Plaintiff's fear that she might have to take on the work of her employees should one fall ill, where she was not physically able to accomplish the tasks that such substitution would demand; and (2) the possibility that Plaintiff indeed found it necessary to rest for hours each day.  The former issue was not addressed in any way in the ALJ's opinion, and the latter was included in the expanded hypothetical but apparently not heeded.  While the latter issue may be attributable to the ALJ's concerns about Plaintiff's credibility, this is not clear from the record as it stands.  In light of the fact that the hypothetical presented to the VE was clearly important to the ALJ's ultimate decision, there is every reason to expect a thorough explanation on these matters.

Therefore, in light of the fact that the failings pointed out by this Court in its remand ruling – specifically, a failure to support disregarding the depressive components of Plaintiff's situation, the testimony of Abb Locke, and the tailoring of the design and consideration of the VE's hypothetical – were not remedied by the newly produced page, the ALJ's denial of benefits remains invalid and affirmation of his ruling is still inappropriate.

c.      Remand is appropriate

Plaintiff argues that in light of Defendant's failure to properly assemble the record before this Court, the ALJ's ruling should be reversed outright.  Defendant responds that any award that is to be granted must be based upon the merits of the case, and that this Court has no authority to summarily grant benefits in the manner of a sanction as Plaintiff seems to demand.  Indeed, Plaintiff provides this Court with no legal basis on which to award social security benefits

according to concepts of equity or procedural fairness, even in light of the SSA's egregious failure. Despite Plaintiff's urging, obduracy of the ALJ is not a sufficient basis to grant Plaintiff DIB. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355-57 (7th Cir. 2005) (vacating district court's grant of benefits where evidence was not sufficiently clear, "urg[ing] the Commissioner to assign a new ALJ to handle any additional proceedings" as a more appropriate means of addressing the obduracy of the ALJ). Here, there is no evidence of obduracy on the ALJ's part, so there is even less of a basis for going over his head regarding the determination of benefits. *See id.*

Defendant argues that this Court should decide this case on its merits rather than remanding it to the SSA once again. However, the issues involved are not so clear-cut as to warrant an outright grant of benefits on the merits of the case as Plaintiff would like, as this Court is limited to granting such a remedy only where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741 (7th Cir. 1993). This is not the case here, where issues of credibility and subjective determinations are central to the determination of DIB. At the same time, there are still too many unresolved factual matters to affirm the ALJ. The record – even with the return of the missing page – does not explain the ALJ's "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345 (7th Cir. 2005).

Though it is painful to postpone resolution of this case any longer, remand to the SSA is the only appropriate response. Therefore this Court's prior remand order is reissued. If this Court had the power to decide this case on the merits as a sanction for dilatory action, that would be done. When this case was here the first time, counsel for the Defendant requested and was

granted continuances to locate the missing page of the ALJ's decisions. After several weeks, counsel advised the court that, despite good faith effort, it could not be located. Upon remand, the ALJ immediately produced the missing page from records that should have been easily available. In the meantime, the Plaintiff has had to wait. It is with great reluctance that this case is remanded again.

**4.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Alter or Amend the Final Judgment and Award Her Disability Benefits is DENIED.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: September 26, 2007